United States. Mr. Brown. May it please the court. Good morning, I'm Jerry Brown and I represent appellant Scott Weldon. This is an appeal of his denial of his section 2255 petition, which he was sentenced pursuant to a plea agreement. The grounds for the 2255 petition were ineffective assistance of counsel on two issues. First, that my counsel had been advised by his attorney that he to stipulate that the drugs involved in the underlying occurrence constituted the but-for causation of the death of the third party of the group of people involved in the transaction, even though there was a toxicology report that reflected that there were combined number of drugs causing the death. And second, that my client was advised that under the Swiderski case from the Second Circuit, my client was simply guilty and that there was no point in trying to litigate the matter further. After my client entered a plea agreement, agreed to testify against one of the other parties, who on substantially the same evidence was acquitted, sometime thereafter my client filed this 2255 petition. So regarding the first issue, but-for-causation, the appellant understands that the mere fact that his co-defendant got a better outcome is not probative of whether he got ineffective assistance of counsel. It does demonstrate, however, that the government failed to achieve a conviction on these facts and there wasn't a special jury verdict that separated out whether the government failed to prove but-for-causation or failed under the Swiderski standard in terms of whether there was an actual distribution of the within the group of three parties at the transaction. My client was deprived of the opportunity to try to raise reasonable doubt as to but-for-causation. His counsel repeatedly advised him that that simply was not a viable or realistic alternative. My client relied on that advice and before it and his trial counsel has actually provided affidavits submitted as part of this record to indicate the repeated discussions about but-for-causation and that it was necessary for him to tell him over and over and over again that... The causation issue is not your strongest issue. There were two experts that testified to causation and it was pretty ironclad that this was a but-for-causation of the death. I think your stronger argument is the Swiderski and that's likely what I agree your honor. I'll move on to the Swiderski. Thank you. The Swiderski issue is more difficult for a number of reasons. One the Swiderski case it has not been to my knowledge explicitly embraced by any other circuit but it has not been explicitly rejected by any of the circuit either. The cases that have addressed Swiderski have distinguished subsequent cases from Swiderski usually on the grounds that the person's involved in actually using the drugs thereafter at least one of them was not present at the actual transaction so therefore someone who was present at the transaction somehow constituted a link to distributing that drug to the person who was not present at the transaction. Right and even though this circuit hasn't embraced the Swiderski doctrine if it can be called that it's certainly an available defense so to the extent that counsel said it was not that's erroneous legal advice. That is correct that is our position and my Mr. the trial counsel has provided an affidavit telling in which he relates that he told Mr. Weldon that the Swiderski defense simply was not available to him. It's one thing to tell your client the law on this area is murky or unsettled but it's something altogether different to just tell them flat-out you don't have a Swiderski defense. Right because we haven't excluded that defense certainly. This court has not excluded that. That is correct and importantly and I have tried to find other cases similar to this one issue that comes to play is the fact that in our case the three parties Mr. Roth, Ms. Fields and my client unlike the cases that have not declined to extend or embrace Swiderski all three of the parties went together to the transaction according to the stipulation they like the car in which my client was an parked immediately behind a car that contained that from which the person who sold the drugs was in and my client got out of the car and went there. Based on those stipulated facts who appear that the other occupants of the car were as close to the transaction as I am to you right now. So under the Swiderski standard all three parties were present at the transaction. So we would argue that based on the language of Swiderski my client was entitled to a Swiderski defense or at least raise one that he was present as well as Mr. Roth and Ms. Fields and under Swiderski there can't be a finding of distribution between the were consumed or by the three occupants there. There's some record that my client simply didn't use some of the drugs and then poured it down the sink because he thought it was too much for him to handle but there's no evidence of any distribution beyond the three people who went to and were present for the actual transaction of the drugs. The verdict in the Fields case again it appears that the jury based their verdict on a Swiderski argument even though Swiderski was not explicitly mentioned in any jury instruction or any argument to the court but if the jury was persuaded that there was not sufficient proof of distribution under those circumstances it certainly stands to reason that my client would have benefited similarly. Also there's a lack of clarity in terms of how the district court was responding to the raising of the Swiderski issue. Then prior to trial Fields counsel did ask for a bill of particulars and raise a motion to dismiss based on Swiderski like arguments but again without explicitly raising Swiderski and rejecting those arguments the district court did not flesh out any of the discussion as to what the appropriate Swiderski standards were. There is a case cited by the government as brief and I apologize for not having found it in my initial submissions to the court United States versus Speer it's a Fifth Circuit case and while here the court declined to grant relief based on Swiderski the reason is telling. There were four parties involved in the actual use of the drug. Three of them were present at the actual transaction which took place again one car parking right behind the other and one of the occupants getting out receiving the drugs from the occupant of the first car getting back in. The reason that relief was not given to that fourth party was that that fourth party was not present at the transaction but the court allowed explicitly allowed for the possibility that the other three occupants might possibly be covered within the scope of Swiderski. So I think the available legal standards as perhaps undeveloped as they are indicate that Swiderski applies when all of the users were actually present and that all the drugs purchased were that actually used for personal use. It was not at a quantity sufficient to implicate distribution beyond those three persons. So for those reasons we had argued that the district court should be reversed and either the sentence vacated or they please remanded back to the district court. Thank you. Okay thank you thank you Mr. Brown and Mr. Garrison. Thank you your honors. May it please the court my name is Bob Garrison I'm a federal prosecutor from Southern Illinois and I prosecuted Mr. Weldon at the district court level. I have trouble relating to much of the argument Mr. Rosen I believe made regarding the Swiderski claim. It's very fact-driven here. Where's the distribution? Right here your honor if I may quote from Swiderski. Swiderski rule is expressly limited to the passing of a drug between joint possessors and I highlighted this I put it in italics on page 8 of my supplement. Well suppose the three of them had gone into the car in the front whatever and each had taken a chunk of the of the drugs. Would that be distribution? No your honor and those are not the facts. Pardon? That would not be but that's not the facts in this case. So those are the facts in your view. No sir. Would you listen to me and not interrupt? Certainly your honor I apologize. In your view the prevent this from being distribution is that the three of them would have had to crowd into the to the dealer's car and each take a little portion of the drugs. Is that what you're saying? No sir. So what are you saying? I'm saying here's what the government regards as a key language quoted on page 8 of my supplemental response. I'm quoting the case of USV Wallace. The rule announced in Swiderski is expressly limited to the passing of a drug between joint possessors and here's the key language your honor who simultaneously acquired possession at the. Yes what that's what's so preposterous. The notion that the three of them would crowd into the car of the dealer and simultaneously take the drugs from him. They're all grabbing at it. The three arms are grabbing at the dealer's drugs. Right? No sir. No? No sir if I might elaborate further. Well how is that different from what happened here? If one of them takes the stuff and you know participation between the defendant Weldon on the one hand and Miss Fields and the dead man Mr. Roth on the other are just diametrically opposed in this respect. Diametrically opposed? I don't understand you. They go to they park behind the dealer and one of them goes in and gets the drugs and brings them back. So I'm saying well are you arguing all three had to go into the dealer's car? No. So tell me what it is what is the line between distribution and just sharing? The dead man Roth asked Weldon to contact his dealer. Weldon did so. That's not in dispute. The dead man gave the money for this purchase to Weldon. That's not in dispute. Then the three of them drove to the dealer that Weldon had selected and whom only Weldon knew and Weldon alone got out of the car and made the hand-to-hand exchange. Weldon was the only one who took the took the risk that the police would intervene at that point. The other two didn't. It was not simultaneous possession. It was Weldon by himself. What do you mean the other two wouldn't? If the police came along and arrested Weldon and then in his car there are two other people, you think the police are going to ignore them? I don't think they would ignore them. And they would find out of course that it was all three of them together doing this. Well it's speculation your honor but I would suggest that if the police came upon a hand-to-hand deal in progress that they would arrest Weldon and now what have you got? The people in the car have no drugs and no money. That is not Weldon's position. Weldon took the risk. Weldon was compensated. They all took a risk in getting involved in drugs. Obviously. Only one of them had the connection. Well Fields of course was prosecuted although she was left off. Wouldn't you say she was involved having injected Roth with the drugs? I would not have asked the grand jury to return an indictment had I not your honor. I prosecuted Miss Fields as well. Right. So she was involved. It wasn't just Weldon who was involved in this business. Well but the facts are highly disputed. It's such trivia really. Well your honor Weldon was a classic middle man in a heroin deal. No he wasn't a classic middle man. These are friends. He's not selling to anybody. They're pals. Selling of course. Two people go into a bar and one of them buys the other a drink. Is that distribution? No. Is that distributing alcohol? No your honor. What's the difference? The difference here your honor is that according to Swarderski they must acquire possession. Forget Swarderski. Just use common sense. Two people go into a bar. They both want to drink martinis and one of them treats the other. Now is that one who treated the other, is he distributing? Is he distributing the martini to the other? Does he pay the other one $300 to get in the martini? Pardon? Look your honor, the bar analogy. We've got the drinker and the man who may be distributing right? What are you talking about? I'm sorry? I don't know what you are talking about. When the car pulls up with the three of them behind the dealer, they're not all going to crowd into the car in front of them. That would be ridiculous. One of them goes to get the stuff. But he's getting it for all three of them. He's not distributing it. He's not selling it. They're pals. Your honor, if I might. Honestly. It's nonsense. If I might your honor, I don't agree with the courts. How do you define distribution? I define distribution as acquiring and distributing, not necessarily. You define for me what you mean by distribution. In this case your honor. No, not in this case. What does distribution mean to you? Anytime you give someone, you hand someone to someone else, that's distribution? No. What is distribution? In regard to your argument. What is distribution? It's acquiring a controlled substance and delivering it and distributing it to someone else, not necessarily. No, but if you just hand the controlled substance to someone else, say here, take this cocaine. I've had enough of it. That's not distribution. So what's the difference between that and Weldon saying, let's get this drugged and we'll have an orgy, you know, and maybe one of us will die. And you call that distribution. Your honor, I feel like I'm not being allowed to advance the salient point here, which is this. I'd like to hear your salient point. Would you tell me what you meant? What's the salient point? Go ahead. Thank you, your honor. Judge Posner has made the argument. No, no, no. Don't refer to him. Just tell me what the salient point is you want to make. I will. It is Weldon who knows who the dealer is and only Weldon. Weldon contacts Weldon's dealer. When they pull up behind the dealer, only Weldon knows that's my dealer. Do you think that the dealer who knows Weldon would sell the dope to someone he doesn't know, to wit the other occupants in the car? No. It's not a matter of they couldn't all crowd up to the dealer's car. I don't understand you. Why wouldn't he sell to someone else? Have you finished answering the question, my question? Not quite. Your honor. But in answer to your question, is it logical that this dealer who knows only Weldon would have done business with a stranger that he does not know? So you say that Weldon and the person from whom he got these goods were the two, and Weldon happened to distribute to the two in the car. That's your salient point. Yes, and I'm also saying that if the other two in the car had gotten out and approached the dealer... Right, and that may be the case, but these are arguments for jury on both sides of the question of distribution, and the material question here is whether the defense counsel's advice that there is absolutely no viable argument on distribution here, so you should plead guilty, was faulty advice. There was a viable defense to the distribution charge, and that may or may not have made a difference to this defendant, but we don't have a decision on that point from the district court. There was no discussion of whether he would have pleaded guilty but for this erroneous advice, and that's the open question that remains, but clearly it was erroneous advice. There is a viable defense. There's arguments against it, as you've posited here, but it's not a lock one way or the other. Your Honor, Weldon was looking at a 20-year mandatory minimum. That's the prejudice question, and we don't have a ruling on that, so you don't want to go there. I'm talking about whether there's viable arguments on both sides of the distribution question here. Your Honor, with all respect, if you read the five cases I cited in the government supplemental memorandum, every appellate court that considers this matter has rejected the Swiderski analysis on these facts. Well, on facts that are distinct from this case because there's a separation between the transaction and the use. Your Honor, I said in my brief that in the case of U.S. v. Wright from the Ninth Circuit, I don't believe that the facts are distinguishable. I think they are identical. Thank you, Your Honor. Thank you, Mr. Brown. Mr. Garrison, sorry. Mr. Brown, anything further? I think just a couple of points in rebuttal. The issue of whether Mr. Weldon was the only one of the three who knew the dealer does not appear to be relevant under Swiderski. The issue is all three of them were present at the transaction, and without going into speculation as to what would have happened had the dealer seen the other two, I'm not an expert on how the illegal drug market works, but the notion that drug dealers don't look for new customers I think would strike most people as unrealistic. Right, and that all goes to the qualitative evaluation of whether this defense is likely to succeed, whether it's worth it to take it to a jury, or you should take the better deal. You can deal in hand or take the risk and roll the dice. Those are all qualitative points that are particular to this case, but it remains that this was at least an available defense. Regarding prejudice to my client, obviously had he gone to trial and been acquitted, he'd be in the same position as Ms. Fields. He did. But we need a remand on that question. Arguably, yes. My understanding is that my client has actually served a good portion of his sentence, so to the extent there's a remand rather than a vacating of the sentence, hopefully the proceedings would be done before the sentence that he's currently serving has elapsed. Otherwise, the relief would be moot. But unless there are further questions, I have nothing further to add. Okay, thank you very much, Mr. Brown and Mr. Kessler. Thank you, Your Honors.